Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2266 | **DATE** | 6/7/2001 |
| **CASE TITLE** | JDY Enterprises vs. Larry Martin | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   The motion to dismiss [4-1] or to transfer venue to the United States District Court for the Southern District of New York [4-2] is denied. Defendant is directed to answer the complaint by June 19, 2001. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUN 12 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 9 |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 JUN 11 PM 5: 41 | 6/7/2001 date mailed notice | |
| sb | courtroom deputy's initials | Date/time received in central Clerk's Office | MDF mailing deputy initials | |

# IN THE UNITED STATE DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JDY ENTERPRISES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 01 c 2266 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| LARRY MARTIN, | ) | |
| | ) | |
| | ) | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

JDY Enterprises ("JDY") sues Larry Martin ("Martin") for breach of an oral contract pertaining to JDY's consulting services. Martin moves to dismiss the complaint for lack of personal jurisdiction and improper venue, pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(3). Alternatively, Martin moves to transfer this action to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. §§ 1404(a).

## BACKGROUND

JDY and Martin submitted affidavits to support their respective positions on personal jurisdiction. All conflicts between the affidavits must be resolved in favor of JDY. *See Weidner Communications, Inc. v. H.R.H. Prince Bandar Al Faisal, H.H.*, 859 F.2d 1302, 1306, n. 7 (7th Cir. 1988) ("party asserting jurisdiction is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record") (internal citations omitted). JDY is an Illinois corporation with its principal place of business in Illinois. JDY's sole shareholder and employee is John Yednock ("Yednock"), an insurance consultant.



Martin is a sole proprietor with his residence and place of business in Westchester County, New York. At all relevant times, Martin was in the business of structuring "opportunity funds" to assist his clients in acquiring insurance companies.

David Rosse, a/k/a Martin Frankel ("Frankel"), hired Martin to devise an "opportunity fund" for the purpose of acquiring insurance companies. Eugene Esposito ("Esposito"), an insurance professional in North Carolina, referred Yednock to Martin as someone experienced in insurance acquisitions. In November 1998, Martin retained Yednock to perform due diligence on companies related to Frankel and on acquisition targets.[1] Additionally, JDY was to assist in the acquisition after the "opportunity fund" was created. In return for these services, Martin promised to pay JDY $5200 per hour plus expenses.

During the first week of February 1999, Martin traveled to Illinois for the purpose of making presentations to Asset Allocation Management and ILONA Financial Group. Martin and Yednock met with these companies on two consecutive days. Topics of conversation during these meetings included: (1) potential reinsurance transactions; (2) acquisitions of insurance business blocks; and (3) management of insurance company assets. Yednock asserts these meetings were held for the purpose of furthering the JDY-Martin contract. Yednock asserts he followed Martin's instruction to meet with five additional Illinois companies in furtherance of the contract. Martin and Yednock communicated about contractual matters through hundreds of telephone calls, e-mails, and faxes. The majority of these communications occurred while

---

[1] Yednock never met Frankel, nor did Martin tell Yednock that he was hiring JDY on Frankel's behalf. In fact, Martin's attorney, Barry Melman, advised Yednock and the other consultants hired by Martin that they were not to communicate with Frankel.

Yednock was in Illinois. Over 75% of the work Yednock performed under the contract took place in Illinois.

JDY sent periodic invoices to Martin from December 1998 through May 1999. The invoices described the work JDY performed and the expenses incurred. The invoices identified the services that were provided to Martin. The description of services always included "discussions with Larry Martin." Pl. Resp. at Exs. I and II. Martin sent JDY payments for the invoice charges covering November 15, 1998 through January 9, 1999. Martin did not pay for services performed between January 9, 1999 and May 1999. JDY contends the company performed its obligations under the contract and Martin owes the company $107,553.84. Martin asserts JDY's services were unsatisfactory and less than promised.

## DISCUSSION

### I  Motion To Dismiss Standard

In ruling on a motion to dismiss, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Pokuta v. Trans World Airlines, Inc.*, 191 F.3d 834, 839 (7th Cir. 1999) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). A claim may not be dismissed if there is a set of facts that, if proven, would entitle a plaintiff to relief. *Trans All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F. 3d 1423, 1426 (7th Cir. 1996). A motion to dismiss tests the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). However, a court is not required to accept conclusory allegations as true. *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 730 (7th Cir. 1994).

**II      Personal Jurisdiction**

JDY has the burden of demonstrating personal jurisdiction over Martin is proper. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997). A federal district court may assert personal jurisdiction over a non-resident defendant if jurisdiction over that defendant is proper under the law of the forum state. Fed. R. Civ. P. 4(e); *Jacobs/Kahan & Co. v. Marsh*, 740 F.2d 587, 589 (7th Cir. 1984). A non-resident defendant may be sued in Illinois if (1) the defendant meets one of the provisions of the Illinois long-arm statute, 735 ILCS § 5/2-209 and (2) the defendant purposefully established minimum contacts with Illinois that satisfy due process. These two requirements collapse into one because the long-arm statute confers jurisdiction on any basis permitted by due process. *FMC Corp. v. Varonos*, 892 F.2d 1308, 1310 (7th Cir. 1990).

In determining whether sufficient minimum contacts exist, courts consider whether a defendant could "reasonably anticipate being haled into court" in Illinois. *World-Wide Volkswagen Corp. v. Woodsen*, 444 U.S. 286, 297 (1980). This requirement is satisfied when the defendant intentionally directs his activities at forum state residents and the litigation arises from injuries allegedly caused by those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

This court will not recount the entirety of Martin's Illinois contacts, but rather highlights the most pertinent. First, Martin initiated contact with JDY and hired the company after receiving a referral from Esposito. This alone establishes that Martin intentionally directed his activities at Illinois. *See McGee v. International Life Insurance Co.*, 355 U.S. 220, 223 (1957) (holding California resident could sue Texas resident in California after Texas resident solicited California resident's business by mail).

Second, Martin communicated with JDY through hundreds of telephone calls, e-mails, and faxes. It is true that making telephone calls to the forum state may not be sufficient to establish jurisdiction. *See Federated Rural Electric Insurance Corp. v. Inland Power and Light Co.*, 18 F.3d 389, 395 (7th Cir. 1994) (internal citations omitted). However, these modes of communication can lend further support to a finding of personal jurisdiction when coupled with other forum state contact.

Third, contract performance occurred in Illinois. Martin traveled to Illinois in February 1999 and met with JDY on two consecutive days in furtherance of their contract. Moreover, 75% of the work JDY conducted in furtherance of their contract occurred in Illinois. Contract performance in Illinois is a sufficient basis for jurisdiction. *Jacobs/Kahan & Co. v. Marsh*, 740 F.2d 587, 590 (7th Cir. 1984).

Finally, payments for JDY's services were sent to Illinois. Sending payments to Illinois is further evidence of contract performance in the forum state. *Jacobs/Kahan & Co.*, 740 F.2d at 591. There is a sufficient basis for concluding that Martin could reasonably expect to be haled into court in Illinois. Accordingly, this court has personal jurisdiction over Martin.[2]

---

[2] Martin's arguments to the contrary are based on the following claims: (1) he did not make an oral agreement with JDY; (2) he did not solicit JDY's business or negotiate any contracts or agreements on his own behalf; (3) no business transactions were performed on his behalf; (4) JDY's invoices were not paid by him but rather by the fund manager; and (5) JDY's performance took place in New York, Connecticut, Florida, South Carolina, and Washington, not Illinois. JDY disputes each of these alleged facts. All disputes must be resolved in JDY's favor.

## III    Improper Venue and Transfer

As an additional ground for dismissal, Martin contends venue in this court is improper. However, where federal jurisdiction is based on diversity of citizenship, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . ." 28 U.S.C. § 1391(a)(2). For the reasons discussed above, JDY's allegations suggest a substantial part of the events giving rise to the alleged contract breach occurred in Illinois.

Alternatively, Martin moves to transfer this suit to the Southern District of New York. To prevail on a motion to transfer, the movant must demonstrate: (1) the proposed district is one where the action could have been brought; and (2) the interest of justice and the convenience of the parties and witnesses favor transfer. 28 U.S.C. § 1404(a). Martin establishes the first prong. JDY could have brought this action in the Southern District of New York because Martin's residence and place of business is located in this state.

For the second prong, the court considers: (1) the plaintiff's choice of forum; (2) the site of material events; (3) the availability of evidence in each forum; (4) the convenience to the parties of litigating in the respective forums." *Barnes v. Rollins Dedicated Carriage Services, Inc.*, 976 F.Supp. 767-68 (N.D. Ill. 1997). Each of these factors weigh against transfer. First, JDY chose this forum. Second, as noted in the foregoing discussion, many of the activities giving rise to JDY's claims occurred in Illinois. In regard to the third and fourth prongs, Martin asserts his witnesses reside in New York and most of JDY's expected witnesses do not reside in Illinois. However, Martin does not offer the names of his potential witnesses or even an estimate as to how many witnesses he might call to testify. Moreover, JDY disputes Martin's conclusions and

asserts that the majority of its witnesses are Illinois residents. Without more, this court must assume more witnesses will be inconvenienced if the trial takes place in New York.

The court must also consider whether a transfer is in the interest of justice. In determining the interest of justice, the court balances (1) relative ease and access to sources of proof; (2) judicial economy; (3) availability of compulsory process; and (4) which state law will govern. For the reasons discussed above, consideration of the first three prongs caution against transfer. Furthermore, the parties seemingly agree that Illinois law governs. Accordingly, transfer is not appropriate.

## CONCLUSION

The motion to dismiss or to transfer venue to the United States District Court for the Southern District of New York is denied.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

June 7, 2001